<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| A. & M. WHOLESALE HARDWARE CO., INC., D/B/A A&M INDUSTRIAL, A NEW JERSEY CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CIRCOR INSTRUMENTATION TECHNOLOGIES, INC., D/B/A HOKE, DEL VAL CONTROLS, INC., STEPHEN GREEN, ROBERT TAYLOR, RICHARD NOHA, AND MICHAEL TERRELL,<br><br>　　　　　　　Defendants. | Civil Action No. 13-0475 (SDW) (MCA)<br><br><br>**OPINION**<br><br><br>February 24, 2014 |

**WIGENTON**, District Judge.

Before this Court are two Motions to dismiss the Amended Complaint filed by Plaintiff A. & M. Wholesale Hardware Co., Inc., d/b/a A&M Industrial, a New Jersey Corporation ("A&M"), pursuant to Federal Rule of Civil Procedure 12(b)(6). One motion was filed by Defendants Circor Instrumentation Technologies, Inc., d/b/a Hoke ("Hoke"); Robert Taylor ("Taylor"); Richard Noha ("Noha"); and Michael Terrell ("Terrell") (collectively, the "Hoke Defendants"). The other motion was filed by Del Val Controls, Inc. ("Del Val") and Stephen Green ("Green") (collectively, the "Del Val Defendants," and together with the Hoke Defendants, the "Defendants"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a)(1). Venue is proper under 28 U.S.C. § 1391(b)(2). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Defendants' Motions to Dismiss are **DENIED**.

1

I.     **BACKGROUND**

    A.     **The Parties**

Plaintiff A&M is a New Jersey corporation engaged in the business of delivering maintenance, repair and operations products and services. (Am. Compl., ¶ 1.) A&M is owned by David and Arnold Young (the "Youngs"), who are Jewish. (*Id*. at 24(l).) Defendant Hoke is a New York corporation engaged in the manufacturing of precision fluid control solutions. (*Id.* ¶ 2.) Defendant Del Val is a Pennsylvania corporation engaged in the business of distributing instrumentation and process control products. (*Id.* ¶ 3.) Defendant Green is a citizen of the state of Pennsylvania and is the owner of Del Val. (*Id.* ¶ 4.) Defendant Noha is a citizen of the state of New York and is employed by Hoke as a Product Technical Specialist. (*Id.* ¶ 5.) Defendant Taylor is a citizen of the state of South Carolina and is employed by Hoke as an Officer and Sales Executive. (*Id.* ¶ 6.) Defendant Terrell is a citizen of the state of California and is employed by Hoke as the Vice President of Sales. (*Id.* ¶ 7.)

    B.     **Factual Allegations**

On or about June 19, 2003, A&M entered into a Domestic Distributor Agreement (the "Agreement") with Hoke whereby A&M became a distributor of Hoke products in a specified territory encompassing certain counties in northern New Jersey and certain New York counties in the New York metropolitan area. (*Id.* ¶¶ 10, 13, 14.) Pursuant to Section 13.1 of the Agreement, A&M was to distribute Hoke products within those counties for a period of one year with the ability to renew the Agreement for additional one year terms subject to the approval of both Hoke and A&M. (*Id.* ¶¶ 11, 14.)

The Agreement was renewed by Hoke and A&M on an annual basis for each successive year after June 2003 through 2011. (*Id.* ¶ 12.) According to the Amended Complaint, during

A&M's nine (9) and one-half year tenure with Hoke, Hoke never "complained to A&M about A&M's duties or obligations under the Agreement nor did it send A&M any written notices of default." (*Id.* ¶ 18.)  Pursuant to Section 3.4 of the Agreement, A&M retained a "Hoke Product Specialist" who developed an expertise in, and was almost exclusively dedicated to, the sale and promotion of the Hoke line of products." (*Id.* ¶ 17.)  The salesperson specifically hired to serve in this position was Ram Hashemi ("Hashemi"). (*Id.*)

On or about August 1, 2011, Hashemi entered into a Confidentiality/Non-Competition Agreement (the "Non-Compete Agreement") with A&M precluding Hashemi from, among other things, disclosing confidential and proprietary information pertaining to "(a) the identity of existing and prospective . . . customers and business associates; (b) trade secrets . . . ; (c) pricing information . . . ; (d) financial information . . . ; market strategies . . . ; and (f) sources from which products are purchased by A&M, to any person or entity without prior written consent of A&M." (*Id.* ¶¶ 19-20.)  The Non-Compete Agreement also precluded Hashemi from accepting a position as an employee or independent contractor with any A&M competitor conducting business within a one hundred fifty (150) mile radius of A&M's principal place of business for a period of eighteen (18) months following the termination of his employment with A&M. (*Id.* ¶ 21.)

During Hashemi's employment at A&M, Hashemi successfully sold the Hoke product line and aided A&M in meeting the sales quotas established by Hoke. (*Id.* ¶¶ 15, 24 (b).)  The Amended Complaint alleges that in or around 2012 as a result of this success, Hoke and its employees Taylor, Noha, and Terrell (the "Individual Hoke Defendants"), conspired with the Del Val Defendants to poach Hashemi from A&M and to obtain A&M's proprietary and confidential information in order to expedite Del Val becoming the new distributor of the Hoke product line in A&M's territory. (*Id.* ¶¶ 22-24.)

By letter dated November 29, 2012, Hoke terminated the Agreement pursuant to Section 13.2 of the Agreement. (*Id.* ¶ 25.) The termination was to take effect thirty (30) days after the letter's date. (*Id.*) According to A&M, during the thirty-day period after notice but before the termination became effective, Hoke breached the Agreement by failing to timely supply orders A&M made. (*Id.* ¶ 27.) A&M alleges that as a result of Hoke's failure to timely supply orders, it lost business and good will. (*Id.* ¶ 28.)

## II.     PROCEDURAL HISTORY

On January 24, 2013, A&M filed a Complaint against the Defendants alleging various causes of action. (Dkt. No. 1.) The Defendants then filed motions to dismiss the original Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on April 11, 2013. (Dkt. Nos. 11, 14.) In response, Plaintiff filed an Amended Complaint on May 2, 2013. (Dkt. No. 17.) Defendants filed the instant Motions to Dismiss on June 11, 2013. (Dkt. Nos. 25, 26.)

## III.    LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that complaints allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that "Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief" (quoting *Twombly*, 550 U.S. at 555 n.3) (internal quotation marks omitted)).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (2009). First, the court must separate the factual elements from the legal conclusions. *See id.* The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678). Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips*, 515 F.3d at 234-35).

## IV.   DISCUSSION

### A.   Choice of Law Provision

5

As a threshold matter, the Hoke Defendants argue that A&M is precluded from asserting New Jersey statutory law claims because the Agreement contains a New York choice of law provision. (Hoke Defs.' Br. 9.) A&M retorts that its New Jersey statutory claims are not encompassed within the scope of the Agreement. (Pl.'s Br. 25-28.) The Agreement's choice of law provision states as follows: "APPLICABLE LAW. This Agreement is to be governed and construed according to the laws of the State of New York, excluding its conflict of laws." (Hoke Defs. Ex. A, Domestic Distributor Agreement ¶ 15.8, June 19, 2003.)

Federal courts sitting in diversity apply the choice of law rules of the forum state when determining the enforceability of contractual choice of law provisions. *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009) (citations omitted). In general, New Jersey courts enforce contractual choice of law clauses as long as they do not violate New Jersey's public policy. *Alcman Servs. Corp. v. Samuel H. Bullock, P.C.*, 925 F. Supp. 252, 259 (D.N.J. 1996) (citation omitted). The choice of law provision at issue here does not violate New Jersey's public policy and is therefore enforceable.

This gives rise to the issue of whether the Agreement's choice of law provision precludes A&M from asserting its statutory claims. Under New Jersey law, "a party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 132 (2001) (quoting *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.*, 78 N.J. 122, 140 (1978)). To be sure, the New Jersey Supreme Court articulated the following in the employment discrimination context:

> [W]e do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to

6

> arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver, e.g., workplace discrimination claims.

*Id.* at 135.

The Third Circuit's opinion in *Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850 (3d Cir. 2009), is instructive. In *Nuzzi*, the Third Circuit determined that a similar choice of law clause did not bar plaintiff's statutory claims. The choice of law clause at issue in *Nuzzi* stated as follows: "This Agreement shall be governed and construed in accordance with the laws of the State of California and any claims or disputes arising out of, or related to this Agreement will be determined by binding arbitration upon the petition of either party in San Francisco, California." *Id.* at 851. Citing to *Garfinkel*, the Third Circuit found that the choice of law language was not broad enough to encompass plaintiff's statutory claims and those claims could proceed. *Id.* at 852-53. Similarly, the choice of law provision here is not sufficiently broad to preclude A&M's statutory claims.

### B. A&M's New Jersey Law Against Discrimination Claims

A&M asserts two causes of action that arise under the New Jersey Law Against Discrimination (the "LAD"). In Count I, A&M alleges that Hoke terminated the Agreement because A&M's owners, the Youngs, are Jewish, in violation of subsection l of the LAD. (Am. Compl., ¶¶ 31-36.) Count II alleges Taylor, Noha, and Terrell aided and abetted Hoke's unlawful discrimination against A&M in violation of the LAD. (*Id*. ¶¶ 37-42.)

The Hoke Defendants argue that A&M failed to state a claim pursuant to subsection l of the LAD because this subsection does not apply to the termination of contracts. (Hoke Defs.' Br. 10-13.) A&M counters that the Hoke Defendants' reading of the statute is unduly narrow and has been expressly rejected by New Jersey courts. (Pl.'s Br. 28-33.)

In pertinent part, the LAD states:

> It shall be an unlawful discrimination: . . . (l) For any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of the race, creed, color, national origin, ancestry. . . of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers . . . .

*N.J.S.A.*§ 10:5-12(l). The statute is clear that it is unlawful discrimination to refuse to contract with or do business with a person on the basis of a protected characteristic. The Hoke Defendants' argument that the statute is inapplicable here is without merit. They maintain that this subsection does not apply to ending a contractual relationship because the statute specifies "contract with" and does not use the phrase "termination of a contract." The Hoke Defendants' arguments to the contrary notwithstanding, the New Jersey Appellate Division's opinion in *Rubin v. Chilton Memorial Hospital*, 359 N.J. Super. 105 (App. Div. 2003), has already determined that this subsection of the LAD applies to the termination of contracts. The court states as follows in *Rubin*:

> To distinguish between a refusal to enter into a contract and the termination of a contract where the motivation is illegal discrimination would mock the beneficial goals of the LAD, remedial legislation which should be liberally construed to advance its beneficial purposes. If, for example, an organization refused to enter into a contract with an architect solely because the architect was a woman, violation of *N.J.S.A.* 10:5-12(l) could not be doubted. The same result must follow if the architect's contract is terminated solely because the architect is a woman.

*Id.* at 111-12. Therefore, subsection l of the LAD clearly applies to the termination of contracts and A&M has sufficiently stated a claim pursuant to it.

With respect to Count II, in order for A&M to state a claim that Noha, Terrell, and Taylor aided and abetted Hoke's violation of the LAD, A&M must allege the following three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the

8

time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir.1999), *cert. denied*, 528 U.S. 1074 (2000)).

In support of its motion, Hoke asserts that A&M has failed to plead sufficient facts to establish that "Terrell or Noha had any discriminatory intent or that they were aware that Taylor had any discriminatory intent." (Def. Hoke Br. 14)  Hoke apparently concedes that the Amended Complaint adequately states an aiding and abetting claim against Taylor and limits its arguments to the roles of Terrell and Noha.  (*Id.*)

The Amended Complaint sufficiently pleads that Taylor made anti-Semitic remarks, professed his hatred for the Youngs, and announced his desire to terminate Hoke's relationship with A&M and the Youngs.  (Am. Comp. ¶¶ 24(cc), (jj), (mm).)  The Amended Complaint also alleges that both Noha and Terrell were aware of Taylor's role and assisted in Hoke's discriminatory termination of the Agreement.  (*Id.* ¶¶ 40, 41.)  Further, the Amended Complaint alleges that in approximately June 2012, Noha was the first defendant to raise with Hashemi the topic of Del Val taking over A&M's Hoke distribution business.  (*Id*. ¶ 24(a).)  It also describes how Noha was instrumental in attempting to recruit Hashemi to go work for Del Val.  (*Id.* ¶¶ 24(z), (aa).)  The Amended Complaint further alleges that "Terrell and Taylor were prepared to get good lawyers to go around any illegalities and find legal loopholes" relating to Hoke's efforts to obtain A&M's confidential and proprietary customer information.  (*Id.* ¶ 24(t).)  Additionally, the Amended Complaint discusses Terrell's role in giving advice on the timing of Hashemi's departure from A&M's employ and Del Val's indemnification of Hashemi should he leave A&M.  (*Id.* ¶ 24(aaa).)  The Amended Complaint concludes that Taylor, Noha, and Terrell "knowingly and substantially" assisted Hoke with terminating the Agreement.  (*Id.* ¶ 41.)  Therefore, the Amended

Complaint adequately states a claim against Taylor, Noha, and Terrell for aiding and abetting Hoke's LAD violation.

      **C.**     **Section 1981 Claim**

In pertinent part, 42 U.S.C. § 1981 (a) provides that "all persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property. . . ." The statute defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (b).

A&M's claim under § 1981 is governed by the burden-shifting principles set forth by the Supreme Court:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).

In support of its motion, Hoke argues that the only allegations in the Amended Complaint regarding discriminatory intent are Taylor's reference to A&M's owners as "cheap bastards" and Taylor asking Hashemi whether he was a "f---ing Jew," which, they maintain, are insufficient to plead a § 1981 claim. (Hoke Defs.' Br. 14-15.) Contrary to Hoke's assertions, in addition to the anti-Semitic statements, A&M alleges that Taylor expressed a long-felt desire to terminate Hoke's relationship with the A&M due to the Youngs being Jewish. (*Id.* ¶¶ 24(cc), (jj), (mm).) The Amended Complaint's allegations of the anti-Semitic slurs coupled with A&M's apparent success in distributing Hoke's products (*id.* ¶ 16), sufficiently plead a violation of § 1981.

### D.  Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims

In Count IV and Count V, A&M alleges that Hoke breached the Agreement and breached the implied covenants of good faith and fair dealing, respectively. For a plaintiff to sufficiently plead a breach of contract claim, he must allege the "(1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage. *See Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d. 725, 728 (N.Y. App. Div. 2009) (internal quotation marks and citation omitted).

In support of its motion, Hoke argues that A&M has failed to plead sufficient facts to establish a breach of contract claim because of A&M's failure to adequately plead a breach of the Agreement and failure to allege damages. (Hoke Defs.' Br. 15-16.) A&M counters that it adequately alleged breach of the Agreement by specifying that "Hoke failed to timely supply orders during the one-month period after it gave notice of termination but before the termination took effect." (Pl.'s Br. 39.) A&M maintains that Hoke's failure to timely supply the orders was arbitrary and capricious. (*Id.*) With respect to damages, A&M points out that "the Amended

Complaint specifically identifies the damages A&M suffered and explains, factually, how those damages were caused by Hoke's breach." (*Id.* at 40.)

Hoke's position that it cannot be held liable for breaching the Agreement by failing to timely supply orders during the thirty-day period between notice and the notice's effective date because the Agreement gives it the discretion to accept or reject orders is without merit. Under New York law, "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). Irrationally or arbitrarily exercising this discretion is a breach of contract. *Id.* Here, the Amended Complaint specifically alleges that Hoke breached the Agreement by failing to timely supply orders during the one-month period after Hoke gave notice of termination. (Am. Compl., ¶¶ 27, 48-49.) A finder of fact could determine that Hoke acted arbitrarily and irrationally in its failure to timely fill the orders.

As for damages, the Amended Complaint states as follows:

> As a result of Hoke's actions in, among other things, failing to timely supply orders made by A&M, A&M was unable to supply its customers with those goods previously and contemporaneously ordered and thus suffered the loss of good will with its existing customers, as well as the loss of business and income from both existing and potential customers.

(*Id.* ¶ 49.) The Amended Complaint also specifies that A&M is in possession of approximately $120,000 of Hoke products that it is unable to sell. (*Id.* ¶ 29.) As such, the Amended Complaint adequately alleges breach of contract and resulting damages.

Furthermore, under New York law, a breach of the implied duty of good faith and fair dealing is considered a breach of the underlying contract. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citing *Fasolino Foods Co. v. Banca Nazionale del Lavoro*,

12

961 F.2d 1052, 1056 (2d Cir. 1992)).  The duty is implied in every contract, and is "a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fishoff*, 634 F.3d at 653 (quoting *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)).  The Amended Complaint alleges that Hoke attempted to lure Hashemi away from A&M prior to Hoke's termination of the Agreement. (Am. Compl., ¶ 53.)  The Amended Complaint further alleges that prior to the Agreement's termination, Hoke attempted to acquire confidential and proprietary customer information for A&M's existing Hoke accounts.  (*Id.*)  It goes on to allege that Hoke shared A&M's confidential and proprietary information with Del Val and Green and encouraged Hashemi to breach the Non-Compete Agreement.  (*Id.*)  Hoke's argument that it was privileged to divulge A&M's confidential and propriety information under the terms of the Agreement is unavailing. (Hoke Defs.' Br. 18-19.)  New York law is clear that where, as here, there is a long-standing distributorship agreement between a manufacturer and distributor that requires the distributor to disclose its proprietary and confidential information, a parallel duty on the part of the manufacturer is created to not use the distributor's information in a manner detrimental to the distributor.  *See Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 602-04 (E.D.N.Y. 2000) (citing *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369 (1957); (*Zimmer-Masiello, Inc. v. Zimmer, Inc.*, 552 N.Y.S.2d 935 (App. Div., 1st Dep't 1990)).  Furthermore, for this reason Count X of the Amended Complaint adequately alleges that Hoke breached a fiduciary duty to A&M to not disclose its propriety and confidential information.

Finally, in contrast to Hoke's arguments, the Amended Complaint sufficiently alleges damages.  It states that as a consequence of Hoke's breach of the implied covenant of good faith and fair dealing, A&M has suffered substantial damages, including loss of revenues.  (Am. Compl.,

13

¶ 57.) Accordingly, the Amended Complaint properly pleads a breach of the implied covenant of good faith and fair dealing claim.

### E. Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage Claims

Count VI of the Amended Complaint alleges tortious interference with A&M's contractual rights against Defendants Del Val, Green, Taylor, Noha, and Terrell. (Am. Compl., ¶¶ 58-67.) Count VII alleges tortious interference with A&M's prospective economic advantage against the same defendants. (*Id.* ¶¶ 68-76.) As an initial matter, the Hoke Defendants argue that New York law governs adjudication of these two claims pursuant to the Agreement's choice of law provision. A&M retorts that New Jersey law governs, and the Del Val Defendants are in agreement that New Jersey law governs. While under certain circumstances non-signatories to a contract could be bound by its terms, this typically occurs when the non-signatories are third-party beneficiaries. *See Costal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *cert. denied*, 464 U.S. 938 (1983). Those facts are not present here. Del Val and Green are certainly not third-party beneficiaries of the Agreement. They are alleged to be A&M's competitors and allegedly sought to replace A&M as Hoke's exclusive distributor in the region specified in the Agreement. Additionally, there is no indication that Taylor, Noha, and Terrell are third-parties beneficiaries of the Agreement. Their status as employees of Hoke, without more, does not transform them into third-party beneficiaries. As such, the Agreement's New York choice of law provision is inapplicable and New Jersey law governs the tortious interference claims.

Under New Jersey law, the elements of tortious interference with a contractual relationship claims and tortious interference with a prospective economic advantage claims are nearly identical. To state a claim for tortious interference with a contractual relationship, the plaintiff must allege 1) a protectable right, i.e., a contract; 2) intentional and malicious interference with the protectable

right 3) that causes a loss with resulting damages.  *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989).  Similarly, tortious interference with a prospective economic advantage claims must essentially allege the same elements.  The only distinction is that it must allege a prospective economic advantage as the protectable right, as opposed to a contract.  *See Macdougall v. Weichert*, 144 N.J. 380, 403-04 (1996) (citing *Printing Mart-Morristown*, 116 N.J. at 751-52); *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d. 249, 288 (D.N.J. 2003), *aff'd*, 173 F. App'x 178 (3d Cir. 2006) ("The requirements for each claim are identical except that the tortious interference with contractual relations claim requires proof of an existing contract.").

The Del Val Defendants argue that A&M has not alleged the existence of any contract or prospective economic advantage with which they interfered.  (Del Val Defs.' Br. 7-9.)  The Individual Hoke Defendants likewise assert that the Amended Complaint fails to allege the breach of any contract or any prospective economic advantage with a third party with which they interfered. (Hoke Defs.' Br. 20, 23.)  These arguments are unpersuasive.  As detailed *supra*, the Amended Complaint sufficiently pleads a breach of contract claim by describing how Hoke failed to timely supply orders during the one-month period after Hoke gave notice of termination but before the termination's effective date.  (Am. Compl., ¶¶ 48-49.)  The Amended Complaint also chronicles how the Individual Hoke Defendants and the Del Val Defendants instituted a campaign to sabotage A&M's business by attempting to illicitly acquire A&M's proprietary and confidential information and key employee.  (*See generally*, Am. Compl.)  The Amended Complaint further alleges that the conduct of these Defendants "was far in excess of the general accepted standards of business and reasonable and fair competition." (*Id.* ¶ 65.)  The Amended Complaint alleges that these actions resulted in Hoke terminating the Agreement and left A&M with approximately

$120,000 in unsellable Hoke inventory. (*See generally*, Am. Compl.) Thus, the Amended Complaint adequately asserts that A&M possessed a protectable right, both in contract and in prospective economic advantage.

The Individual Hoke Defendants, citing to *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297 (2002), argue that A&M's tortious interference claims fail because such claims are contract claims that cannot be converted into tort claims by suing Hoke's corporate employees. (Hoke Defs.' Br. 20-22.) The Individual Hoke Defendants' reliance on *Saltiel* is misplaced. In *Saltiel*, the plaintiff brought negligence claims against the defendant corporate officers alleging that the officers negligently performed the contractual task. *Saltiel*, 170 N.J. at 300-01. The New Jersey Supreme Court reinstated the trial court's grant of summary judgment to the defendants, holding that the individual corporate defendants did not have an independent duty to plaintiff outside the scope of the contract. *Id.* at 315, 318. As such, plaintiff could not maintain negligence claims against the individual corporate defendants. *Id.* at 315, 316. While the facts and issues presented in *Saltiel* are inapposite to the instant matter, *DiMaria Construction, Inc. v. Interarch*, 351 N.J. Super. 558 App. Div. 2001), *aff'd*, 172 N.J. 182 (2002), is instructive.

In *DiMaria*, plaintiff brought a tortious interference claim against, *inter alia*, defendant officer for the officer's role in getting plaintiff's contract with another entity terminated. *DiMaria Constr., Inc.*, 351 N.J. Super. at 563-66. A jury returned a verdict in favor of plaintiff on its tortious interference cause of action. *Id.* at 566. The appellate court affirmed, opining that

> [A] clear-cut consensus has emerged that if an employee or agent is acting on behalf of his or her employer or principal, then no action for tortious interference will lie. . . If, on the other hand, the employee or agent is acting outside the scope of his or her employment or agency, then an action for tortious interference will lie.

16

*Id.* at 568-69 (citations omitted). The appellate court determined that the evidence presented at trial supported the jury's conclusion that the officer acted outside the scope of her employment. *Id.* at 570. Significantly, the Third Circuit has advised that an agent or "employee who acts for personal motives, out of malice, beyond his authority, or otherwise not 'in good faith in the corporate interest'" is acting outside the scope of his or her agency or employment. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 849 n.11 (3d Cir. 1996) (quoting *George A. Fuller Co. v. Chicago College of Osteopathic Med.,* 719 F.2d 1326, 1333 (7th Cir. 1983)).

The Amended Complaint contains allegations that the Individual Hoke Defendants acted for personal motives, out of malice, or not in good faith of corporate interest. For example, the Amended Complaint details how Taylor repeatedly made anti-Semitic comments in reference to A&M's owners. (Am. Compl., ¶¶ 24(jj), (mm).) It also describes Taylor's long-felt desire to terminate Hoke's relationship with A&M because of A&M's owners' religion. (*Id.* ¶ 24(cc).) Further, the Amended Complaint alleges that Taylor believed he was in serious jeopardy if Hashemi was unsuccessful with Del Val because Taylor had sold the idea to Green. (*Id.* ¶ 24(jj).) Additionally, the Amended Complaint alleges that Noha and Taylor were acting for personal motives as Noha, Taylor, and Green were personal buddies and could be considered "brothers." (*Id.* ¶¶ 24(f), (aa).) The Amended Complaint also describes how Terrell advised Green not to give Hashemi written confirmation of indemnification for Hashemi's breach of the Non-Compete Agreement as it would implicate Del Val in future legal battles with A&M. (*Id.* ¶ 24(aaa).) It goes on to discuss Terrell counseling Green on the timing and circumstances surrounding Hashemi leaving A&M's employ. (*Id.*) Thus, the Amended Complaint adequately alleges that the Individual Hoke Defendants acted outside the scope of their employment and therefore, sufficiently states tortious interference claims.

For their part, the Del Val Defendants argue that A&M failed to plead that their malicious interference caused A&M's loss. (Del Val Defs.' Br. 10-16.) In the tortious interference context, "malice is defined to mean that the interference was inflicted intentionally and without justification or excuse." *DiMaria Constr., Inc.*, 351 N.J. Super. at 567 (citing *Printing Mart-Morristown*, 116 N.J. at 751). Malice "is determined on an individualized basis, and the standard is flexible, viewing the defendant's actions in the context of the facts presented." *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 306 (2001). When "[r]educed to its essence, the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game.'" *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div. 1995) (citing *Harper-Lawrence Inc. v. United Merchants & Mfrs. Inc.*, 261 N.J. Super. 554, 558 (App. Div. 1993)). In a tortious interference action brought by a competitor, "the line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage." *Id*. at 204. Causation, on the other hand, is adequately pled when the complaint alleges that "if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefit." *Id.* at 199.

Based upon the allegations in the Amended Complaint, it can reasonably be inferred that the Del Val Defendants' actions were malicious and caused A&M's loss. For example, the Amended Complaint details numerous instances in which Green and Del Val attempted to pressure Hashemi into divulging A&M's confidential and proprietary information. (Am. Compl., ¶ 24(r), (s), (t), (oo), (ss), (tt).) The Amended Complaint discusses an occasion when a Del Val employee instructed Hashemi to leave Hashemi's laptop with the employee so that the employee could surreptitiously take A&M's confidential and propriety information without detection. (*Id*. ¶ 24(oo).) The Amended Complaint specifies how Green forwarded to Hashemi Hoke's

18

commitment letter to Del Val, before Hoke terminated the Agreement, and how Green demanded Hashemi provide him with A&M's confidential and proprietary information. (*Id*. ¶ 24(ss).) It also details how Green chastised Hashemi for his failure to provide A&M's information. (*Id*. ¶ 24(tt). Additionally, the Amended Complaint alleges that Green explained to Hashemi that he need not worry about breaching any duties to A&M because Terrell and Taylor were prepared to retain good attorneys to circumvent any illegalities. (*Id*. ¶ 24(t).) When the allegations in the Amended Complaint are considered in totality, a reasonable inference can be drawn that Green and Del Val acted with malice.

With respect to causation, the Amended Complaint alleges that it was Hashemi's responsibility to ensure that Del Val and Green were prepared to assume control of A&M's Hoke distribution territory. (*Id*. ¶ 24(ff).) It also states that Hoke had been waiting years for an opportunity to terminate its relationship with A&M. (*Id*. ¶ 24(bb).) Based upon these allegations, it can therefore be inferred that if there had not been interference from the Del Val Defendants, A&M would have remained Hoke's distributor. Thus, the Amended Complaint adequately pleads causation vis-à-vis the Del Val Defendants, and A&M's tortious interference counts are cognizable.

### F. Civil Conspiracy to Commit Tortious Interference with Contractual Relations and Prospective Economic Advantage

In Counts VIII and IX, the Amended Complaint alleges that Green, Taylor, Terrell, and Noha engaged in a civil conspiracy to commit tortious interference with A&M's contractual relations and with A&M's prospective economic advantage. Under New Jersey law, a civil conspiracy is "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results

19

in damage.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (quoting *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993)).  Importantly, a civil conspiracy claim is cognizable only if the underlying offense is also actionable.  *Id.*

The Individual Hoke Defendants argue that A&M's claim must fail since their underlying tortious interference claims must fail.  (Hoke Defs.' Br. 24-25.)  Similarly, Green primarily argues that since A&M's tortious interference claims must be dismissed, its civil conspiracy claims must be dismissed as well.  (Del Val Defs.' Br. 16-17.)  These argument are without merit.  As discussed *supra*, A&M's tortious interference claims are adequately pled and thus, its civil conspiracy claims are cognizable.

Green additionally argues that A&M failed to allege an agreement between him and another defendant to engage in tortious conduct.  (Del Val Defs.' Br. 17-18.)  Contrary to Green's assertion, the Amended Complaint is replete with allegations that permit an inference that he and the Individual Hoke Defendants agreed to interfere with A&M and Hoke's business relationship.  (Am. Compl. ¶¶ 24(a), (d), (f), (l), (n), (q), (r), (t), (aa), (dd), (ff), (gg), (hh), (ii), (rr), (xx), (yy), (zz), (aaa).)  Accordingly, this Court finds that A&M has pled sufficient facts to maintain its civil conspiracy claims.

**V.      CONCLUSION**

For the foregoing reasons, the Hoke Defendants and the Del Val Defendants' Motions to Dismiss are denied.

s/ Susan D. Wigenton, U.S.D.J

Orig:       Clerk
cc:         Judge Arleo
            Parties